UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA          :
                                  :    **ORDER DENYING MOTION FOR**
    -against-          :    **BAIL PENDING APPEAL**
                                  :
SUN DANEMAN, HYANG RAN KIM, a/k/a :    06 Cr. 717 (AKH)
"Tina," SENG HEE RYAN, JAE SHIM, and :
TAE NAM THOMPSON,                 :
                                  :
                  Defendants. :
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        On May 23, 2008, defendant Jae Shim ("Shim") moved for bail pending appeal, pursuant to 18 U.S.C. § 3143(b). For the reasons stated below, the motion is denied.

        On November 9, 2007, a jury found Shim guilty of one count of conspiracy to violate the Mann Act, 18 U.S.C. § 2421, which prohibits the transportation of individuals in interstate commerce to engage in prostitution. Shim was acquitted on Counts Two and Three of the indictment. On April 10, 2008, I sentenced Shim to 25 months of imprisonment, followed by two years of supervised release.

        The standards governing release pending appeal are set forth in 18 U.S.C. § 3143(b), which provides, in relevant part:

> [A] judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds ... by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ... and ... that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in....reversal, a new trial, or a sentence that does not include imprisonment on all counts. Id.

1

Therefore, in order to grant defendant's motion for bail pending appeal, I must find that 1) defendant is not likely to flee or pose a danger to the safety of any other person or the community; 2) the appeal is not for purposes of delay; 3) the appeal raises a substantial question of law or fact, and 4) that if the Second Circuit decides the appeal in a manner favorable to Shim, whether that decision is likely to result in a reversal or a new trial. See United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985).

For purposes of this motion, only elements three and four are disputed and the discussion will therefore be restricted to these elements. The Second Circuit defines a "substantial" question as "one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." Id. at 124 (internal citations omitted).

In viewing the evidence presented, I find that Shim's appeal has not raised a substantial question of law or fact. Furthermore, even where a question of law or fact raised on appeal is found to be substantial, the court must still consider whether that question is "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal or a new trial." Id. at 125 (internal quotations and citations omitted).

In her motion, Shim argues that there are five categories of error that raise substantial issues of law or fact, and would likely result in reversal or a new trial. First, she argues that there was insufficient evidence of her participation in the conspiracy charged in Count One; second, she was deprived of her due process rights because the jury was not instructed on an essential element of the offense; third, she was deprived of her right to a fair trial because this Court denied severance of the third count of the indictment; fourth, her due

process rights and Sixth Amendment rights were violated as a result of English language transcriptions that were admitted into evidence, and fifth, an alleged error in the guidelines calculation of her sentence and the unreasonableness of the sentence I imposed. I find that all these arguments lack merit and do not meet the standard required by the statute and the Second Circuit as set out in Randell. Each will be addressed in turn.

With regards to the sufficiency of the evidence presented at trial, which I rejected previously in connection with Shim's Fed. R. Crim. P. Rule 29 motion filed shortly after the jury returned its verdict, I find that the Government presented sufficient evidence to prove that Shim participated in a scheme to transport women across state lines for purposes of engaging them in prostitution. At trial, the prosecution introduced transcripts of telephone calls between Shim and Tae Hoon Kim ("Kim"), the "hub" of the conspiracy and one of the drivers, in which Shim requested that Kim provide her with "three to four people" and gave Kim her phone number. The tapes also recorded Shim's conversations with Kim about her earlier participation in the same conspiracy with another driver and hub, Sung Chul Il, a/k/a "Choel-i." In one call, Shim tells Kim that one of her former business partners knew Choel-i "very well" and that he "had many women," and goes on to describe the details of her prior business arrangement, including "times where up to forty, fifty customers came in," and that she spent the money backing her business partner and the taxi drivers. Furthermore, Shim mistakenly argues that the fact that the evidence may have demonstrated multiple conspiracies, rather than a single, unified conspiracy, is grounds for reversal. At trial, I instructed the jury on the nature of a "hub and spokes" conspiracy, in which the Government alleged that the defendants, as the spokes, relied on a common supply source, the drivers Kim and Cheol-i, to provide them with women to work as prostitutes. See Trial Tr. at 1873-74. Specifically, I instructed the jury as follows:

3

> It is not necessary that the members of each group knew one another's specific identities but you must find that the defendant knew that she and others were part of a larger whole, sharing a common unlawful purpose, and that the activities of the defendant with each group were dependent and were helped by her activities with the other groups, also sharing the same unlawful purpose. Id. at 1874.

The evidence presented by the Government showed that the defendants knew that the drivers supplied women to other prostitution businesses, that the defendants knew the names and identities of those other businesses, and that the defendants knew that workers were pulled from the same labor pool as the other defendants'. In addition, the evidence also showed that, contrary to Shim's current claim, that the defendants shared a "common venture" in maintaining a supply of women who could be moved from business to business to meet customers' needs and demands. Accordingly, I find that this issue raises no substantial question of law or fact to justify bail pending appeal.

Shim's second argument centers on my instruction to the jury regarding the function of the word "knowingly" in the language of the statute. Shim argues that the Government was required to prove that Shim knew that the victims were being moved across state lines, rather than proving simply that Shim knew that they were being transported. In my instruction to the jury on this issue, I stated the following:

> It is sufficient if the defendant was actively involved in the travel arrangements that led to the individual's transport or if she had an agreement with another person in the conspiracy for the other person to be actively involved in transporting a woman across state or national lines for purposes of prostitution and with intent that the woman engage in prostitution. The Government is not required to prove that the defendant knew that state or international lines are being crossed as long as the Government proves beyond a reasonable doubt that either state or foreign commerce was involved, namely, that the individuals were transported across state or foreign lines. Id. at 1883.

4

This instruction is consistent with the Second Circuit's rulings on the issue. In United States v. Griffith, 284 F.3d 338 (2d Cir. 2002), defendants were charged with violating another provision of the Mann Act, 18 U.S.C. § 2423, which applies to anyone who "knowingly transports an individual" under the age of 18 in interstate or foreign commerce. The trial court instructed the jury that "knowingly" did not modify the purpose of the traveler, which here would be to travel in interstate commerce. The Second Circuit affirmed the district court's finding, ruling that "knowingly" applied to the "transports" but not to the clause immediately following – "an individual who has not yet attained the age of 18 years." Id. at 350-51. Since the statutory construction of § 2421 mirrors that of § 2423, it stands to reason that my instruction was correct and that "knowingly" applies only to transportation and not the interstate commerce element. Decisions from the Fourth and Seventh Circuits on § 2421 confirm this holding. See, e.g., United States v. Jones, 471 F.3d 535, 539 (4th Cir. 2006) (holding that the adverb "knowingly" in § 2421 modifies the verb "transports"); United States v. Hattaway, 740 F.2d 1419, 1427 (7th Cir. 1984) (same).

Third, Shim's argument that this Court erred by refusing to sever Count Three from the indictment is rejected. Motions to sever under Fed. R. Crim. P. Rule 14 are "committed to the sound discretion of the trial judge," United States v. Chang An-Lo, 851 F.2d 547, 566 (2d Cir. 1988), and when attempting to overturn a denial of a Rule 14 motion, the defendant must "show prejudice so severe that his conviction constituted a miscarriage of justice" in order to be granted a reversal. United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993). The Second Circuit has held that the district court's discretion here is "virtually unreviewable." United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998).

In her motion, Shim fails to pinpoint any evidence that was admitted as to Count Three but would not have been admitted for Counts One and Two. The evidence in this case was straightforward as to the culpability of each defendant, so that the jury could consider it without risk of any spillover effect, and I reminded the jury throughout the trial and in the charge that they were to consider each defendant separately when making their findings. Furthermore, the instruction to the jury to deliberate and return verdicts as to each count and each defendant effectively eliminated any chance of spillover prejudice. The fact that the jury convicted Shim on Count One but not Counts Two and Three also reduces the likelihood that any spillover prejudice resulted. See United States v. Hamilton, 334 F.3d 170, 183 (2d Cir. 2003) ("[W]here the record indicates that the jury was able to distinguish between counts or between defendants, and to assess separately the evidence pertinent to each, we have found no basis for concluding that a new trial was warranted because of prejudicial spillover. The absence of such spillover is most readily inferable where the jury has convicted a defendant on some counts but not on others."). Therefore, I find that the denial of the motion to sever was proper and presents no substantial question for appeal.

Shim's fourth argument alleges that I incorrectly admitted English language translations of Korean language conversations that were taped by the Government, and that this admission constituted a violation of her due process and Sixth Amendment right to confront the evidence against her. Prior to trial, defendants were provided with copies of the translations and I instructed the parties to identify portions of the transcript that were in dispute. At a pre-trial hearing on October 16, 2007, I reviewed the disputed portions and ruled as to which version, the Government's or the defendants', should be admitted. The Government was then instructed to provide a Korean language transcript for the defendants as to the remaining disputed translations.

Defendants created a competing translation as to those words, and cross-examined the Government's translator, Chin Suk Kim-Moore, at trial as to other possible interpretations of certain words used in the phone conversations. The Government, through Kim-Moore's testimony, established her qualifications, how the recordings were initiated, and the procedure for translating the conversations. In the jury charge, I reminded the jury that they were to "give appropriate weight," as they saw fit, to the translated conversations, by evaluating the credibility of the translator just as they would evaluate any other fact witness. See Trial Tr. at 1900-01. Defendants, including Shim, did not call their own translator to testify. Shim can point to no specific alleged inaccuracies that would have resulted in a violation of her rights. Therefore, I find that this argument also fails.

    Shim argues finally that the five-level enhancement that I applied in determining her sentence, to account for the six victims who worked at Shim's spa, was incorrectly applied because the Government did not identify those alleged victims, or provide facts supporting a claim that any woman was transported or coerced to travel to work at the Hong Kong. This argument fails for several reasons. First, the Government called two of Shim's workers to testify at trial, so at a minimum, two of the victims' identities were clearly stated. Second, there is no requirement that victims need to be specifically identified by name; as I have noted at sentencings in the past, given the nature of the prostitution business and the legal status of the victims, it is often impossible to identify the victims with any precision or specificity. Finally, I find that the evidence presented at trial against Shim, including phone conversations between Shim and the driver Tae Hoon Kim about the fact that women were being brought in from China and Korea, and the comparative attributes of women from one country versus another. Accordingly, it is implausible to argue that Shim was unaware of the victims' movement across

7

state lines, and furthermore, nowhere in the sentencing guidelines does such a requirement exist, as the Government notes. See U.S.S.G. § 261.1, App. Note 1.

Accordingly, I find that Shim has presented no substantial question of law or fact that would result in reversal or a new trial, and her motion for bail pending appeal is denied.

SO ORDERED.

Dated:   May 30, 2008
         New York, New York

                                             ALVIN K. HELLERSTEIN
                                             United States District Judge